UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**JOHN L. DYE, JR.,**

    **Plaintiff,**

    -vs-                                           **Case No. 07-C-450**

**WILLIAM LENNON,**
**CHRISTIAN A. GOSSETT**
**THOMAS J. MICHLOWSKI,**
**STEVE CASPERSON,**
**MARTHA STACKER,**
**CINDY WIELAND,**
**LEON LIPP,**
**BYRON BARTOW,**
**JENNIFER DEGROOT, and**
**SCOTT BOEVERS,**

    **Defendants.**

## DECISION AND ORDER

Plaintiff John L. Dye, Jr., who is incarcerated at Wisconsin Resource Center, filed this civil rights action pursuant to 42 U.S.C. § 1983. This matter comes before the court on the plaintiff's motion for reconsideration.

### I. MOTION FOR RECONSIDERATION

A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1982),

*aff'd*, 736 F.2d 388 (7th Cir. 1984)).  While it is true that any nonfinal decision or order is subject to revision at any time before the entry of judgment, Fed. R. Civ. P. 54(b), such revisions are discouraged.  "A court has the power to revisit prior decisions of its own . . . in any circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).  In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration."  *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996).

By order of July 10, 2007, the plaintiff's petition for leave to proceed *in forma pauperis* was denied because he had accumulated three strikes under 28 U.S.C. § 1915(g), and because he failed to show that he was in imminent danger of serious physical injury. Specifically, the court noted that the plaintiff had accumulated three "strikes" as follows: 1) *Dye v. Mary Kay, et al.,* No. 00-C-1058, dismissed as frivolous on April 23, 2001; 2) *Dye v. Hansan, et al.,* No. 01-C-276, strike assessed for filing a frivolous appeal on May 5, 2004; and 3) *Dye, et al. v. Milwaukee Journal Sentinel, Inc.,* No. 99-C-1324, dismissed for failure to state a claim upon which relief may be granted on December 28, 1999.  The plaintiff contends that he is entitled to reconsideration because he has not struck out for purposes of § 1915(g).  In particular, the plaintiff asserts that he did not receive strikes in *Dye v. Hansan*, No. 01-C-276 (E.D. Wis. May 5, 2004) and *Dye v. Milwaukee Journal Sentinel, Inc.*, No. 99-C-1324 (E.D. Wis. Dec. 28, 1999).

2

Contrary to the plaintiff's assertion, a strike was properly assessed relating to his action in *Dye v. Milwaukee Journal Sentinel, Inc.* because that case was dismissed for failure to state a claim. However, it appears that the plaintiff should not have been assessed a strike pertaining to his appeal in *Dye v. Hansan*, No. 01-C-276. The docket reveals that, by order of May 5, 2004, this court denied the plaintiff's motion for leave to proceed *in forma pauperis* on appeal, assessed an initial partial filing fee and assessed a strike for the filing of a frivolous appeal. Nevertheless, the documents submitted by the plaintiff in support of his motion for reconsideration show that on August 3, 2004, the Court of Appeals for the Seventh Circuit, determined that this court "should not have assessed an initial partial filing fee or purported to assess a strike for the filing of the . . . appeal." Plaintiff's Sworn Affidavit, Ex. 1 (Docket #8); *Dye v. Hansan*, No. 04-1781 (7th Cir. Aug. 3, 2004). While the court of appeals directed its clerk of court to correct its docket to reflect that "the district court's order dated May 5, 2004, denied the in forma pauperis motion," the docket in this court relating to *Dye v. Hansan*, No. 01-C-276 never reflected that correction.

Because the documentation submitted by the plaintiff shows that, to date, the plaintiff has only incurred two strikes, the motion for reconsideration will be granted and the order of July 10, 2007, will be vacated. The court will also direct the clerk of this court to correct the docket in *Dye v. Hansan*, No. 01-C-276 to reflect that the order dated May 5, 2004, (Doc. #116) properly denied the *in forma pauperis* motion, but should not have assessed an initial

3

partial filing fee or a strike per the court of appeals' decision in *Dye v. Hansan*, No. 04-1781 (7th Cir. Aug. 3, 2004).

Accordingly, the plaintiff will be permitted to proceed *in forma pauperis* in this action. The court will now screen the petition pursuant to 28 U.S.C. 1915A, and address the plaintiff's motion for the appointment of counsel which had been dismissed, as moot, in the order of July 10, 2007.

## II. SCREENING OF COMPLAINT UNDER 28 U.S.C. § 1915A

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

4

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff has named the following defendants and is suing them in their individual and official capacities: (1) William Lennon, the District Attorney for Winnebago County; (2) Christian Gossett, an Assistant District Attorney for Winnebago County; (3) Thomas

5

J. Michlowski, the Medical Director at the WRC; (4). Steve Casperson, the Administrator of the Wisconsin Division of Adult Institutions; (5) Martha Stacker, a unit Supervisor at WRC; (6) Cindy Wieland, a Unit Supervisor at WRC; (7) Leon Lipp, a Unit Supervisor at WRC; (8) Byron Bartow, the Warden of WRC; (9) Jennifer Degroot, a Social Worker at WRC; and (10) Scott Boevers, the Mail/Property Supervisor at WRC.[1] (Complaint at 1-2).

According to the sworn complaint, the plaintiff was involved in an altercation with Travis Coen, a fellow inmate, on April 15, 2006. (Complaint at 2). Thereafter, the plaintiff went to the bathroom, where he was attacked by another inmate, Leland Lewis, a friend of inmate Coen. *Id.* at 3. Inmate Lewis knocked the plaintiff unconscious and when the plaintiff came to, Lewis continued to punch him and pulled him back into the bathroom. *Id*. As a result of the attack, the plaintiff had to be transported to an area hospital for treatment. *Id*. at 2.

He maintains that his efforts to pursue criminal charges against inmate Lewis "were continuously impeded and hindered" by several defendants including: Casperson, Wieland, Lipp, Bartow, Stacker, Lennon and Gossett.[2] *Id.* at 4. In particular, he contends that defendant Wieland "continued to 'patronize' [him] telling him each day that the authorities would be coming to speak with him which impeded and hindered his right of access to the court," and

---

[1] At various points in his complaint, the plaintiff refers to defendant Jennifer Degroot as Jennifer "Degrott." *See e.g.*, Complaint at 10. The court does not know which spelling is accurate, but will refer to this plaintiff as Jennifer Degroot since that is how she was named in the caption of the complaint.

[2] Despite his general assertion that defendant Stacker hindered his ability to pursue criminal charges, he makes no specific allegations concerning her personal involvement in this alleged wrongdoing.

6

"refused to allow the plaintiff use of the institution telephone in his effort to immediately and personally contact family whom could assist in contacting the authorities regarding the assault." *Id.* at 5.

Similarly, defendant Lipp interfered with the plaintiff's ability to pursue criminal charges when he "deliberately promoted misguided information allowing it to be circulated regarding the assault. *Id.* at 6. He states that defendant Casperson and Bartow were informed of the actions of their subordinates, but did nothing to intervene or "eliminate [the] unconstitutional practices." *Id.* at 4 and 6.

He further attests that defendant Lennon, the Winnebago County District Attorney, and defendant Gossett, a Winnebago County Assistant District Attorney, also interfered with his ability to pursue criminal charges against inmate Lewis. In particular, he states that these defendants "'grossly' neglected and disregarded the plaintiff['s] request" to file formal charges against inmate Lewis, and they failed to respond to his numerous letters or inform the plaintiff of the status of the investigation. *Id.* at 7-8.

The plaintiff also alleges that numerous defendants interfered with his right to practice his religion. He states that defendant Michlowski, the Medical Director at WRC and Jennifer Degroot, a Social Worker at WRC, obtained a "Temporary Guardianship" over him based upon false allegations, and that such guardianship interferes with his First Amendment right to practice his religion because it prevents him from fasting. His complaint reads as follows:

7

[Defendant Michlowski] having the plaintiff medical records readily available to him failed and neglected to examine those records and/or present truthful facts to the court upon petitioning the court for a Temporary Guardianship against the plaintiff.

This defendant suggested to the court that the plaintiff was incompetent, that plaintiff was a patient at the facility, and not a 'resident', that the plaintiff suffers from a major mental illness, that he had not had any food (solid or liquid) for the past three - (3) days, - and that the plaintiff [sic] mental status was allegedly such that he was, unable to act in his own best interest.

Defendant Michlowski, falsely stated to the court that to a reasonable degree of medical certainty, that the plaintiff present condition constitutes a medical emergency (i.e. this is a life threatening situation) and hence requested the court grant an emergency temporary guardianship.

Despite this defendant clearly being informed by the plaintiff that at such time which the plaintiff allowed this defendant to examine him, that he indeed was religiously 'fasting', this defendant threatened the plaintiff that if he did not eat something, that he would petition the court, which in fact despite the liquids consumed by plaintiff the defendant did just that alleging false allegations in an attempt to obtain the petition granted.

\*      \*      \*

[D]efendant Degrott, [sic] made and/or supported 'false' allegations upon petitioning the court for a petition for Temporary Guardianship as well as violated the plaintiff [sic] First Amendment Rights to the United States Constitution.

\*      \*      \*

Defendant Degroot [sic] signature throughout the original petition itself clearly support [sic] the fact of her direct involvement regarding the 'false' claims, accusation(s) and allegation(s) made against the plaintiff.

As a result of this defendant [sic] actions, inactions or woefully inadequate actions, the plaintiff [sic] Constitutional Right(s) were not only violated but he also suffered mental and emotions injurie(s) [sic] as well.

\*      \*      \*

8

> Regarding the plaintiff exercise of religious [sic, he indeed had a Constitutional Right to practice his beliefs which did include 'fasting', which defendant Degrott, [sic] falsely alleged otherwise upon petitioning the court for a temporary Guardianship against the plaintiff.

*Id.* at 9-10. The plaintiff further avers that defendant Stacker, a Unit Supervisor at the WRC, also interfered with his right to practice his religion when she "persistently attempted to make the plaintiff eat something and disregard[ed] his religious 'fasting.'" *Id.* at 11. According to the Complaint, defendant Stacker "even threatened the plaintiff of being moved to a more secure unit if he did not eat something; at which time she stood by his door to assure that in fact he did eat." *Id.*

Finally, the plaintiff maintains that defendant Boevers, the Mail/Property Supervisor at the WRC, deliberately withheld various items of personal property from him in violation of "institution rules, policies and procedures." *Id*. at 12. The plaintiff states that defendant Boevers refused to deliver a lamp which was being sent to the plaintiff by a manufacturer to replace the one that he had sent out to be repaired. *Id.* at 12. Citing "security concerns," defendant Boevers informed the plaintiff that he would not be allowed to have the lamp because its base was made of metal and the shade was glass. *Id.* The plaintiff insists other inmates have similar lamps. *Id.*

In addition, plaintiff finds fault with the fact that defendant Boevers "rejected, withheld and denied personal autographed photo(s) sent to the plaintiff. *Id.* at 13. He states that the photographs are not commercially published photographs (which are prohibited), but, instead

9

they are photographs from his "friends"; namely, "Actresses, television Anchors and/or Commentators, Judges and even the President of the United States and First Lady." *Id* at 13-14.

As relief, the plaintiff seeks an injunction ordering that each defendant refrain from "prior action, inactions, or woefully inadequate actions," restitution from each defendant for any and all rejected, withheld, denied, and/or destroyed properties of the plaintiff's, $10,000 in compensatory damages from each defendant and $5,000 in punitive damages from each defendant.

**A. Access to Courts**

Prisoners have a due process right of access to the courts and must be given a reasonably adequate opportunity to present their claims. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Such access must be effective and meaningful. *Id.* at 822. Thus, the right of access to the courts demands that prison authorities provide prisoners with adequate law libraries or adequate assistance from persons trained in the law to prosecute both post-conviction and civil rights actions. *Id.*; and *Younger v. Gilmore*, 404 U.S. 15 (1971).

To succeed on a claim of denial of access to the courts, a plaintiff must show that any alleged interference caused actual injury and hindered efforts to pursue a legal claim respecting a basic constitutional right. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Such injury will be shown when an inmate can "demonstrate that a non-frivolous legal claim has been frustrated or was being impeded." *Id.* at 353.

10

The plaintiff claims that defendants Casperson, Wieland, Lipp, Bartow, Stacker, Lennon and Gossett denied him access to the courts by failing to assist him in his efforts to have criminal charges launched against the inmate that attacked him. However, the plaintiff, as a private citizen has no "judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Leeke v. Timmerman*, 454 U.S. 83 (same); *Williams v. Holt*, 2007 WL 2274397 (M.D. Ala. July 31, 2007). Applying *Lewis,* the court finds that the plaintiff has failed to state an access to courts claim because he has not alleged that he was impeded in the pursuit of a non-frivolous legal claim. *See Williams*, 2007 WL 2274397 *6. (plaintiff's allegation that the defendant failed to assist him in his quest to obtain a criminal complaint warrant against a fellow inmate and failed to allow legal officials to bring the document to the plaintiff at the prison facility failed to state a valid access to courts claim). Therefore, the plaintiff's access to court claim will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**B. Free Exercise of Religion Claims**

The plaintiff insists that the enforcement of the improperly obtained Temporary Guardianship interferes with his right to practice his religion because it prevents him from religiously fasting. While the plaintiff expressly states that such conduct violates his rights under the First Amendment, he also makes reference in his complaint to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Thus, this court will evaluate his claims under both.

11

Under RLUIPA, prisons that receive federal funding are forbidden "to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The Wisconsin prison system receives federal funding. *Id.* at 1110 (citing *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir. 2003)). "[T]o state a claim under RLUIPA a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief[.]" *Lindell*, 352 F.3d at 1110.

Under the First Amendment's Free Exercise Clause, an inmate retains the right to exercise his religious beliefs in prison. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2006) (citing *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002)). To prevail under the Free Exercise Clause, a plaintiff must show a "substantial burden" on a "central religious belief or practice." *Kaufman*, 419 F.3d at 683 (citing *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989)). An impediment to a prisoner's right of free exercise may be constitutional "'if it is reasonably related to legitimate penological interests.'" *Alston v. DeBruyn*, 13 F.3d 1038, 1039 (7th Cir. 1994) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The plaintiff alleges that defendants Michlowski, Degroot and Stacker have interfered with his religious fasting when they obtained the Temporary Guardianship, in part, on the basis of his refusal to eat, and when they used the terms of the Temporary Guardianship to force him to eat.[3] The plaintiff has not specified in his complaint the source of his religious

---

[3]His allegations that he willing wishes to fast for religious purposes are in stark contrast to the allegations he made in *Dye v. Bartow*, Case No. 06-C-634 which is also pending before this court. In

12

beliefs. Nevertheless, the court believes that he has arguably stated claims under RLUIPA and the Free Exercise Clause of the First Amendment against defendants Michlowski, Degroot and Stacker.[4]

## C. Due Process Claim

The plaintiff claims that defendant Boevers improperly withheld his lamp and autographed photographs. An individual is entitled to an opportunity for a hearing before the state permanently deprives him of his property. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). However, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

---

that case, the plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference to medical needs claim based on his allegations that confinement to segregation prevented him from being able to eat and caused him to suffer dangerously low blood pressure. The court also notes that in *Dye v. Bartow*, Case No. 06-C-634, the plaintiff offered the affidavit of defendant Michlowski to support his claim that his mental health problems place him in a condition of medical emergency. Yet, in his current complaint, he states that there was no medical emergency warranting the issuance of the Temporary Guardianship.

While at this stage of the proceedings, the court must accept the allegations in the instant complaint as true, the plaintiff is advised that false statements in a sworn complaint, written motion or other paper presented to the court will subject him to sanctions under Rule 11, Federal Rules of Civil Procedure which may include dismissal of his claims or monetary sanctions.

[4] Ultimately, plaintiff will be required to identify his religion in order for the court to determine whether fasting is a central religious belief as required under the First Amendment.

13

Wisconsin law provides tort remedies to individuals whose property has been converted or damaged by another. *See* Wis. Stat. §§ 893.34 and 893.51. If a deprivation of property did not occur as the result of some established state procedure, and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt*, 451 U.S. at 543-44; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are adequate, albeit in a different context).

Here, the plaintiff alleges that defendant Boevers acted in contravention of state procedure when he withheld his personal property, and Wisconsin provides an adequate post-deprivation remedy for redressing his missing property. Thus, the plaintiff may not pursue a due process claim based on the defendants' seizure of his lamp and autographed photographs.

## D. Administrative Code Violations

The plaintiff states that various provisions of the Wisconsin Administrative Code were violated when the defendants interfered with his pursuit of criminal charges against inmate Lewis and when defendant Boevers withheld his personal property. However, failure to follow state administrative procedures or state law does not necessarily give rise to a constitutional violation. The mere fact that the conduct in question violates DOC regulations does not per se form the basis of §1983 liability. *Kompare v. Stein*, 801 F.2d 883, 888 (7th Cir. 1986). Section 1983 of Title 42, United States Code, addresses violations of federal law and the United States

14

Constitution; it is not a means to redress violations of state procedures. *See Sandin v. Connor*, 515 U.S. 472, 478-83 (1995); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The plaintiff's claim concerning the administrative code violations fails because the court has already determined that the conduct about which he complains (i.e., interfering with the pursuit of criminal charges and withholding personal property) does not violate federal constitutional standards. To the extent that the plaintiff is seeking to proceed on a state law claim concerning the administrative code violations, the court declines to exercise its supplemental jurisdiction over such claim since the federal claims to which the possible state law claim is related will be dismissed. *See* 28 U.S.C. § 1367(a); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (court has supplemental jurisdiction over claims arising under state law when they are so related to claims arising under federal law that they form part of the same case or controversy.) Accordingly, his claim that the defendants violated provisions of the Wisconsin Administrative Code will also be dismissed.

In sum, the court finds that the plaintiff has alleged sufficient facts to support First Amendment and RLUIPA claims against defendants Michlowski, Degroot and Stacker. The plaintiff's due process, access to courts and administrative code violation claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and the remaining defendants will be dismissed.

15

### III. MOTION FOR APPOINTMENT OF COUNSEL

The plaintiff asks that an attorney be appointed to represent him in this case because he needs assistance in (1) understanding the court's rules and procedures; (2) interpreting case law; (3) preparing legal documents; (4) dealing with the Attorney General; (5) presenting the proper arguments to the court; and (6) understanding the applicable legal principles. Plaintiff's Motion for Appointment of Counsel at 1. Although civil litigants do not have a constitutional or statutory right to counsel, this court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. *Zarnes*, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear to be competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *Id.* (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

Plaintiff does not indicate in his motion what efforts, if any, he has taken to secure counsel. In an affidavit submitted to the court along with his motion for reconsideration, the plaintiff attached a number of letters addressed to lawyers seeking representation. However, none of the letters (all of which were dated either June 7, 2007, or June 18, 2007) were signed by the plaintiff, and there is no indication that these letters were, in fact, mailed to the attorneys.

16

Moreover, plaintiff does not specify what response, if any, he received from these attorneys.[5] Thus, the plaintiff has not sufficiently demonstrated that he has made efforts to secure counsel or that such efforts were unsuccessful.

The court also notes that the claims upon which the plaintiff was allowed to proceed do not appear, at this stage of the proceedings, to be unusually complex. Contrary to plaintiff's assertion that he is not competent to litigate this case, he has already successfully pressed two motions for reconsideration (one in this case and one in *Dye v. Bartow*, 06-C-634) and has litigated seven other § 1983 actions and two petitions seeking a writ of habeas corpus.

Therefore, at this time, the court does not believe that the presence of counsel is likely to make a difference in the outcome of this case. Accordingly, the plaintiff's motion for the appointment of counsel will be denied, without prejudice.

The plaintiff is encouraged to contact the Milwaukee Bar Association Lawyer Referral and Information Service (515 East Wells Street, Milwaukee, WI 53202, (414) 274-1901), or the State Bar of Wisconsin Attorney Information and Referral Service, ((608) 257-4666), in his efforts to obtain legal representation on a contingency basis. To provide a helpful overview of his claims, the court suggests that the plaintiff forward a copy of this order in any of his requests for representation.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for reconsideration (Doc. # 7) is **granted**.

---

[5] Although these letters were attached to the plaintiff's affidavit, he made no reference to the letters in the affidavit itself, nor did he attest to his efforts to secure counsel.

17

**IT IS FURTHER ORDERED** that the court order of July 10, 2007, in this case is **vacated**.

**IT IS FURTHER ORDERED** that the clerk of this court shall correct the docket in *Dye v. Hansen*, No. 01-C-276 to reflect the fact that the order dated May 5, 2004, (Doc. #116) denied the *in forma pauperis* motion but should not have assessed an initial partial filing fee or a strike per the court of appeals' decision in *Dye v. Hansen*, 04-1781 (7th Cir. Aug. 3, 2004).

**IT IS FURTHER ORDERED** that the plaintiff's request to proceed *in forma pauperis* (Doc. # 2) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's access to courts claim, due process claim and administrative code violation claim are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that defendants William Lennon, Christian Gossett, Steve Casperson, Cindy Wieland, Leon Lipp, Byron Bartow, and Scott Boevers are dismissed from this action.

**IT IS FURTHER ORDERED** that the plaintiff's motion for the appointment of counsel (Doc. #3) is **denied, without prejudice**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the petition, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service

18

packages is $8.00 per item. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that the defendant shall file a responsive pleading to the petition.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $349.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of

19

any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2007.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**

20